UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ALEJANDRO MADRID, | Case No. 1:19-cv-01456-JLT (PC) |
|---|---|
| Plaintiff, | **ORDER DIRECTING PLAINTIFF TO FILE A FIRST AMENDED COMPLAINT *OR* NOTIFY THE COURT OF HIS DESIRE TO PROCEED ONLY ON CLAIM FOUND COGNIZABLE** |
| v. | |
| H. ANGLEA, et al., | |
| Defendants. | (Doc. 1) |
| | 21-DAY DEADLINE |

Alejandro Madrid challenges the defendants' refusal to allow visitation with his wife. (Doc. 1.) The Court finds that Plaintiff states a cognizable claim against H. Anglea but not Khan, J. Toubeaux, or M. Voong. The Court further finds that Plaintiff may not bring claims on behalf of his wife. Therefore, the Court directs Plaintiff to file a first amended complaint curing the deficiencies identified in this order or a notice that he wishes to proceed only the claim found cognizable.

**I.  SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a

defendant immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## II. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks and citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's factual allegations," not his legal theories. *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks and citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

**B. Linkage and Causation**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

## III. DISCUSSION

### A. Plaintiff's Factual Allegations[1]

In 2011, Plaintiff was incarcerated at Pleasant Valley State Prison. (*See* Doc. 1 at 8.) According to Plaintiff, prison staff subjected his wife to an unlawful search as she was attempting to visit him on December 24, 2011. (*Id.* at 9.) Prison officials found Plaintiff's wife in violation of a visiting policy, causing her to lose visiting privileges from April 5, 2013 to April 5, 2015. (*See id.* at 8, 9.) It appears that Plaintiff's wife entered the prison in possession of narcotics. (*See id.* at 10, 11.) Plaintiff cites Title 15, section 3173.2(c)(3)(C), of the California Code of Regulations, which provides that a "visitor found in possession of drugs … shall be referred to the institution's Investigative Services Unit … for possible arrest and shall be suspended from visiting at any CDCR facility." (*Id.* at 10.) Officials did not charge Plaintiff's wife with a crime. (*Id.* at 9.)

Plaintiff is now incarcerated at Sierra Conservation Center. (*Id.* at 3.) On September 4, 2018, Plaintiff submitted a "CDCR 22 Request Form" to Sergeant Khan, requesting visitation by his wife and explaining that he had been "drug free" for seven years. (*Id.* at 11.) Sergeant Khan did not respond and instead "had Sergeant Chambers respond." (*Id.*)

On October 8, 2018, Warden Anglea denied Plaintiff's request for visits with his wife due to "convictions [that] disqualify visitation." (*Id.* at 4, 8, 18.) Plaintiff submitted an administrative

---

[1] For screening purposes, the Court accepts Plaintiff's factual allegations as true. *See Iqbal*, 556 U.S. at 678.

3

appeal on November 30, 2018, which Anglea cancelled for untimeliness. (*Id.*) On December 13, 2018, Plaintiff appealed the cancellation. (*Id.* at 12.) On December 19, 2018, Anglea responded that the cancellation was made in error, but nevertheless rejected the appeal because it was "missing necessary supporting documents." (*Id.* at 12, 18.) Plaintiff resubmitted the appeal on December 30, 2018. (*Id.*) Anglea and Appeals Coordinator Toubeaux sent Plaintiff a second rejection on December 26, 2018, four days before Plaintiff resubmitted the appeal. (*Id.* at 13, 18.) Plaintiff then submitted his appeal for a third time, which Anglea returned "without a response." (*Id.* at 13.)

On January 2, 2019, Plaintiff filed a third-level appeal. (*Id.*) Appeals Coordinator Voong rejected the appeal because it had not been reviewed at the second level. (*Id.*)

Plaintiff alleges Anglea's denial of visiting privileges violates state regulations. He cites the 2011 version of Title 15, section 3176.3, which provided that persons who violate a visiting policy shall be suspended from visiting for three years, and permanently for any subsequent offense. (*Id.* at 10.) Plaintiff alleges that the suspension of his wife's visiting privileges for 8 years, based on one offense, is invalid. (*See id.* at 10, 19.) Plaintiff also states that the 2011 version of section 3176 required a "subsequent disciplinary hearing" "prior to exclusion" "after [a] third violation." (*Id.* at 19.) Plaintiff never received such a "subsequent hearing." (*Id.*)

### B. Causes of Action

#### 1. Freedom of Association or Substantive Due Process

"[P]risoners do not enjoy an absolute right to receive visits while incarcerated, even from family members." *Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010). In addition, "inmates possess no constitutional right to contact visitation," *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (citations omitted), and prisons may properly deny visitation by particular individuals, *see Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *as amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998). Though persons have a "right to maintain certain familial relationships, including association among members of an immediate family," "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citations omitted). "[F]reedom of association is among the

rights least compatible with incarceration…. Some curtailment of that freedom must be expected in the prison context." *Id.* (citations omitted).

Incarceration does not "altogether terminate[]" the "right to intimate association," though. *Id.*; *see also Dunn v. Castro*, 621 F.3d 1196, 1205 (9th Cir. 2010) ("we do not hold or imply that incarceration entirely extinguishes the right to receive visits from family members"). Courts have not clearly defined the scope of this right, "the extent to which it survives incarceration" or whether it arises from the First Amendment or the substantive due process component of the Fourteenth Amendment. *See Overton*, 539 U.S. at 128, 131-36. In any event, prison regulations that curtail the right are constitutionally valid if they "bear a rational relation to legitimate penological interests." *Id.* at 132 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). "[F]our factors are relevant in deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge: whether the regulation has a valid, rational connection to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are ready alternatives to the regulation." *Id.* (internal quotation marks omitted) (citing *Turner*, 482 U.S. at 89-91).

In *Overton*, the Supreme Court reviewed a Michigan regulation under which "[p]risoners who commit multiple substance-abuse violations are not permitted to receive any visitors except attorneys and members of the clergy…. An inmate subject to this restriction may apply for reinstatement of visitation privileges after two years." 539 U.S. at 130. Applying the *Turner* factors, the Court held that the regulation did not violate the plaintiffs' First Amendment or substantive due process rights. *See id.* at 134-36. However, the Court noted that "[i]f the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations." *Id.* at 137 (analyzing the regulation under the Eighth Amendment). Similarly, in *Dunn*, the Ninth Circuit rejected on qualified immunity grounds a challenge to an 18-month restriction on a prisoner's right to receive visits from his children. 621 F.3d at 1197, 1205. The Court stated, though, that its "conclusion might be different if [the plaintiff] were … subject to a

5

blanket ban on his visitation privileges," and it noted that the temporary restriction was not "imposed arbitrarily or irrationally." *Id.* at 1203-04, 1205 (citing *Overton*, 539 U.S. at 137).

Plaintiff alleges that officials at Sierra Conservation Center are denying visitation with his wife for an offense that occurred at Pleasant Valley State Prison in 2011. (Doc. 1 at 4, 8, 18.) In his notice denying visitation, Warden Anglea noted that past "convictions … disqualify visitation" by Plaintiff's wife. (*Id.* at 18.) Plaintiff asserts that he is being punished a "'second' time for a rule infraction that occurred in 2011," since Pleasant Valley officials already suspended Plaintiff's visiting privileges from April 5, 2013 to April 5, 2015. (*Id.* at 8.) Plaintiff has tried to appeal the denial of visitation, but officials have not reviewed his appeals on the merits due to an asserted lack of supporting documents. (*Id.* at 12-13, 18.) When Plaintiff attempted to resubmit his appeal with supporting documents, it was returned without a response. (*Id.* at 13.)

Based on the above, the Court finds that Plaintiff's claims against Anglea are "sufficient to warrant ordering [Defendant] to file an answer." *White v. Pazin*, 587 F. App'x 366, 367 (9th Cir. 2014) (internal quotation marks and citations omitted) (holding that plaintiff's allegations that jail did not permit visitation by minors under 12 should be allowed to proceed past screening). Although it is well established that incarceration may properly and significantly curtail the right to association, the right is not altogether terminated. *See Overton*, 539 U.S. at 131. Plaintiff alleges that Anglea is denying him visitation with his wife for a period of 8 years based on a "disqualifying conviction," even though Plaintiff's wife was never charged with a crime, let alone convicted. (*Id.* at 8-9.) Plaintiff alleges that such restriction is "arbitrary." (*Id.* at 9.) In *Overton*, the Supreme Court noted that the "withdrawal of all visitation privileges … for a much longer period" than two years, or restrictions "applied in an arbitrary manner to a particular inmate," raise particular concerns. 539 U.S. at 137; *see also Dunn*, 621 F.3d at 1203-04, 1205. Thus, the Court finds that Defendant should be required to answer on whether such restrictions as applied to Plaintiff implicate a protected right or serve legitimate penological interests. *See Overton*, 539 U.S. at 132-36; *Turner*, 482 U.S. at 89-91; *see also White v. Cty. of Merced*, No. 1:12-cv-00917-BAM, 2019 WL 1430394, at *8-10 (E.D. Cal. 2019).

///

1 | Plaintiff does not state cognizable claims against the remaining defendants. With respect
to Sergeant Khan, Plaintiff alleges the defendant "had Sergeant Chambers respond" to his request
for visitation when, assumedly, Plaintiff believes that Khan should have responded. (*See* Doc. 1 at
11.) This allegation does not show that Khan played any role in the alleged constitutional
deprivation of which Plaintiff complains. *See Johnson*, 588 F.2d at 743.

With respect to Appeals Coordinators Toubeaux and Voong, Plaintiff's allegations are
limited the defendants' denials of his administrative appeals. (*See* Doc. 1 at 13.) Such allegations
are insufficient to state a claim. "[I]nmates lack a … constitutional entitlement to a specific prison
grievance procedure." *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citation
omitted). Plaintiff's allegations regarding his appeals may be relevant to whether he is required to
exhaust administrative remedies, *see Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (exhaustion not
required when prison officials "thwart inmates from taking advantage of a grievance process");
but they do not give rise to viable, independent claims.

        2. <u>Equal Protection</u>

"The Equal Protection Clause [of the Fourteenth Amendment] requires the State to treat
all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008)
(citation omitted). To state an equal protection claim under section 1983, "a plaintiff must show
that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon
membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)
(citations omitted). "Intentional discrimination means that a defendant acted at least in part
because of a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th
Cir. 1994) (emphasis removed) (citation omitted).

"The first step in equal protection analysis is to identify the state's classification of
groups." *Country Classic Dairies, Inc. v. State of Mont., Dep't of Commerce Milk Control
Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). "To accomplish this, a plaintiff can show that the law
is applied in a discriminatory manner or imposes different burdens on different classes of people."
*Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).

///

"The next step … [is] to determine the level of scrutiny." *Country Classic Dairies*, 847 F.2d at 595. "Classifications based on race," for example, "are subject to strict scrutiny," *Freeman*, 68 F.3d at 1187, whereas classifications based on gender are subject to "intermediate scrutiny," *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995) (citations omitted). Classifications not based on a "suspect" class like race or gender are subject to "rational-basis review." *Romer v. Evans*, 517 U.S. 620, 631 (1996); *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (citations omitted). Under this standard, a classification must have a rational relationship to a legitimate state interest in order to comply with the Equal Protection Clause. *See Romer*, 517 U.S. at 631-32.

If an action does not involve an identifiable class, a plaintiff may still establish an equal protection claim if she "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted); *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008).

Plaintiff does not state a cognizable equal protection claim. He does not allege that he is a member of an identifiable class, or that Defendants discriminated against him based on his membership in such a class. *See Barren*, 152 F.3d 1194. Likewise, Plaintiff does not allege that Defendants treated him differently from others similarly situated. *See Olech*, 528 U.S. at 564.

    3. Retaliation

A claim of retaliation has five elements. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). First, a plaintiff must allege that he engaged in protected activity. *Id.* For example, filing an inmate grievance is protected, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as is the right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *see also Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985). Second, the plaintiff must show that the defendant took adverse action against him. *Watison*, 668 F.3d at 1114 (citation omitted). "Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.* In other words, the plaintiff must claim the defendant subjected him to an adverse action because of his engagement in protected activity. *Rhodes*, 408 F.3d at 567. "Fourth, the plaintiff must allege that the official's acts would chill or silence a person of ordinary firmness from future [protected]

8

activities." *Watison*, 668 F.3d at 1114 (internal quotation marks and citation omitted). "Fifth, the plaintiff must allege 'that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution….'" *Id.* (quoting *Rizzo*, 778 F.2d at 532).

Plaintiff does not state a cognizable retaliation claim. His allegations do not show that Defendants denied him visitation rights *because of* his engagement in any protected activity. *See Rhodes*, 408 F.3d at 567. To the extent that Plaintiff's claims are based on the rejection of his administrative grievances (*see* Doc. 1 at 14), such claims are not viable. As explained in section III.B.1, *supra*, prisoners do not have a right to specific grievance procedures. *See Ramirez*, 334 F.3d at 860.

### 4. California Constitution Article I, Section 2

In addition to the First and Fourteenth Amendments of the U.S. Constitution, Plaintiff raises his claims under Article I, section 2 of the California Constitution. (Doc. 1 at 4.) The section provides, in relevant part, "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. art. I, § 2(a).

As an initial matter, Article I, section 2(a) is irrelevant to Plaintiff's free association claim; and, as explained in section III.B.4, *supra*, Plaintiff does not show that Defendants' actions were motivated by any protected conduct, as required to state a retaliation claim. In addition, section 2(a) does not generally provide a private right of action for money damages. *See Cuviello v. City & Cty. of San Francisco*, 940 F. Supp. 2d 1071, 1100 (N.D. Cal. 2013) ("no court … has yet to recognize a private right of action for damages under article I, section 2(a) since *Degrassi* [*v. Cook*, 29 Cal. 4th 333 (2002)]") (citations omitted); *McAllister v. Los Angeles Unified Sch. Dist.*, 216 Cal. App. 4th 1198, 1216 (2013) ("private right of action was not contemplated under the [California] Constitution, section 2(a)"). For these reasons, Plaintiff does not state viable claims under California Constitution Article I, Section 2.

### C. Claims Raised on Behalf of Plaintiff's Wife

"Ordinarily, a party must assert his own legal rights and cannot rest his claim to relief on the legal rights ... of third parties." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017)

(citation and internal quotation marks omitted). This general rule is "closely related" to constitutional "standing" requirements. *See Warth v. Seldin*, 422 U.S. 490, 499-500 (1975). Courts "have not treated this rule as absolute, however, recognizing that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) In order to invoke third-party standing, the plaintiff or "party asserting the right" must show that he "has a close relationship with the person who possesses the right [and that] there is a hindrance to the possessor's ability to protect his own interests." *Morales-Santana*, 137 S. Ct. at 1689 (quoting *Kowalski*, 543 U.S. at 130).

To the extent that Plaintiff attempts to assert the legal rights of his wife (*see, e.g.*, Doc. 1 at 9-10), the Court notes that Plaintiff cannot assert these rights unless he shows that there is a "close relationship" and a "hindrance" to his wife's ability to protect her own interests. *See Kowalski*, 543 U.S. at 130. Plaintiff does not make the required showing. Although Plaintiff's marital relationship satisfies the first, close-relationship requirement, Plaintiff does not satisfy the second requirement because he does not show any hindrance to his wife's ability to prosecute her own lawsuit. *See Morales-Santana*, 137 S. Ct. at 1689; *see also Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990). In other words, Plaintiff's wife, not Plaintiff, is the appropriate litigant for claims based on the violation of her rights.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court orders Plaintiff, **within 21 days**, to file a first amended complaint or, alternatively, a notice that he wishes to proceed only on the claim found cognizable against Anglea. If Plaintiff no longer wishes to pursue this action, he may file a notice of voluntary dismissal. If Plaintiff needs an extension of time to comply with this order, he shall file a motion seeking an extension **no later than 21 days** from the date of service of this order.

Plaintiff is informed that an amended complaint supersedes the original complaint, *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012), and must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. The Court provides Plaintiff with an opportunity to amend his complaint to cure the deficiencies identified in this order. However, he may not change the nature of this suit by adding unrelated claims in an amended complaint.

Accordingly, the Court **ORDERS**:

1. Plaintiff is **GRANTED** leave to file a first amended complaint;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form; and,
3. **Within 21 days** from the date of service of this order, Plaintiff must file **one of the following three items**:
    a. a first amended complaint curing the deficiencies identified in this order, or
    b. a notice that he does not wish to file a first amended complaint and instead wishes to (1) proceed only on his free association/due process claim against Defendant Anglea, (2) dismiss his equal protection, retaliation, and state law claims, (3) dismiss all claims brought on behalf of his wife, and (4) dismiss Defendants Khan, Toubeaux, and Voong.
    c. a notice of voluntary dismissal of this entire case.

**If Plaintiff fails to comply with this order, the Court will recommend that this action proceed only on the claim found cognizable herein and that all other claims and defendants be dismissed with prejudice.**

IT IS SO ORDERED.

Dated: **April 6, 2020**          /s/ Jennifer L. Thurston
                                   UNITED STATES MAGISTRATE JUDGE

11